My name is Gregory Latimer, and I, along with Mr. Reginald Green, represent the appellants in this matter. Understanding that the court's review here is de novo, I did want to point out a couple of things with regard to the decision below, in that the reason for the grant of summary judgment, in our view, deserves no deference, because it was not consistent with the rule for summary judgment, in that, number one, the evidence was not in any way viewed in the light most favorable to the plaintiffs, and number two, the reasoning was erroneous. In fact, on page 74 of the decision, the court indicated that the plaintiffs had failed to carry their burden with regard to immunity. Clearly, that is the wrong standard. Qualified immunity is an affirmative defense, and the burden rests with the defendant, the party asserting that right. The plaintiff need only show that the rights at issue were clearly established, and in this particular case, the fact that probable cause is required for an arrest has been long established in the United States. And with respect to the issue of force, force without reason is unreasonable. I think that is a well-established fact as well, and the court having shifted that burden. Now, you're aware of our recent opinions, noting that the Supreme Court has reversed the denial of qualified immunity for applying too generalized a clearly established principle probably five or six times in the last five to ten years. So you're not getting at the problem when you make the generalized observation you just did. Well, I don't think that what I was generally speaking, I understand what the court is saying, but in this particular case, we're talking about probable cause for an arrest, and probable cause for an arrest, I don't think the Supreme Court has touched upon that or any other circuit, has suggested that absent probable cause, there is a constitutional violation of the Fourth Amendment. If you do not have arguable probable cause. Or even arguable probable cause. Well, that's the standard for qualified immunity. Well, in this particular case, you don't even have arguable probable cause. Let's take, for instance, Tracy White and Williams. First of all, you've got to deal with Bernini for me. And second of all, my reading of the unlawful assembly statute is that as long as there are six people engaging in that kind of conduct, the person arrested doesn't have to be a participant. He just has to be present and resisting or disobeying an order to disperse. That's the core of your argument, is to the contrary. No, I don't think so. Because, for instance, you take Tracy White and William Davis. They're sitting in a restaurant in a McDonald's. They're not with anybody. They're told to leave a restaurant. The police cannot create the situation. And so there's no way to have an unlawful assembly if you take people out of a restaurant. They left the restaurant, and then the thing you complained about developed. Well, with all due respect, Your Honor, they didn't leave the restaurant. The police, at good cost, emptied the restaurant. Well, based upon their assessment, the restaurant wasn't closed by the owner. The owner was not concerned. That's the qualified immunity perspective, their perspective. But it has to be reasonable. Well, yes, but from their perspective, not yours. Well, I understand that, but you have to have facts. And the facts here were that it was 3.30 in the afternoon. There was no situation that was going on. The owner did not believe that there was any need to close. He would not have closed but for the fact that the police told him to close. And then, once they did close the restaurant, the police then ordered Mr. Davis and Ms. White to move on. And then to move on. And then to move on. They weren't gathered for any purpose. They were eating food. There was nothing about their presence in the restaurant that any reasonable person could suggest had to do with an assembly. Unless you're saying that if you happen to be eating in a restaurant and the police decide to close the restaurant, then that constitutes an assembly. I guess I don't understand the facts. I thought the dispute arose because Ms. White said, I've got to wait outside the McDonald's to be picked up by my husband. And the police said, no, you have to move down the street. No, that's not the dispute. What the dispute is, is that they were moved from the restaurant to Sharondale. They were then moved from Sharondale up Sharondale. They were then moved further down the street and were told then to move into an apartment complex. What Ms. White did at that point was say, I'm being moved someplace where I don't know where I'm going. My husband is supposed to pick me up at the McDonald's. What am I supposed to do if you keep moving me? She doesn't have a phone. Can you distinguish our opinion in Bernini with regard to the peaceful protestors who were swept up in the dispersal of a not so peaceful crowd at the National Convention in St. Paul? Well, first of all, the easily distinguishable part is that these weren't protestors. You have to have protestors in order for that to apply. You didn't read our opinion, apparently. The opinion addressed the people who were not protesting. They were moving along the dispersal route, not having been part of the protest, and they still had to obey the continue to disperse commands. And if they didn't, they were arrested. Well, Your Honor, again— That was the facts, or are we not reading the same opinion? I think that what you're not reading is the facts of this case. And the facts of this case are not consistent with that. Again— Yeah, this was more violence. Well, Your Honor, there was no violence. Well, let me ask you about that. As I understand it, the incident involving Michael Brown occurred on August 9th, right? Correct. And these arrests occurred on August 13th, four days later. No. There were—the arrests took place between—over several days. I thought White and Davis were on August 13th.  That's when Judama, right now. Yes, sir. Is it not correct that between the 9th and the 13th, there was significant violence and burning of buildings? At night, yes, sir. So how can you say it would be unreasonable for the police to say, We want to get ahead of the situation. We want to protect the McDonald's. Let's empty the store, get people out of the area, and be proactive as opposed to reactive to the situation that occurred for two straight or three straight nights. We're not arguing about whether or not the police had the right to close the McDonald's over the objection of the owner. That's not the issue. Well, you just said it was. Who's just sitting there peacefully eating their hamburger. I thought that was your whole argument. Well, what I said was the second part of that. You can't force somebody to leave a restaurant, and then when they leave a restaurant, accuse them of assembling with others. That's what I said. It wasn't that they accused them of—they wanted everybody out of the area. Correct? It's not clear what they wanted, to be honest, because what they said, after not being able to demonstrate any of the facts that would suggest that, was that they failed to obey a directive that they not interfere with police while they were trying to move a truck. So the reasoning behind this changed repeatedly over the course of events. And that is the entire point that we've been trying to make. This was simply just like a bulla. This is move on, move on. You have an unconstitutional policy that says that the police can just come in and say to anybody, move on, move on. And if those folks don't move on, even if they were not assembled, even if they were not doing anything, then they can be arrested for failure to disperse. But in this particular case with White and Davis, you have a situation where the police created the situation where they were with other people. They were not with anyone. What is wrong with, I guess I'm losing your argument. What is wrong with saying to anybody who's in the area, we have decided to proactively clear the area so that we don't have a recurrence of what has occurred the last three nights. Everybody gets out, whether you're a protester or whether you're a demonstrator or whether you just happen to be there eating your hamburger. Are you saying that's unconstitutional to do that? What I'm saying is if there's no reasonable basis to believe that these people have been involved in an unlawful assembly, then I don't think that the police have the right, simply because they're the police, to have people move on. I mean, there is a liberty in it. So if there's a bomb threat on an airport, they can't clear the airport? That's a different situation, Your Honor. Why? Again, if I have the bomb threat. If they're being proactive, they're guarding against the risk of significant injury. Well, that is a specific threat. We have a threat of a bomb. They have had multiple buildings burned to the ground the two and three nights before. Why is that not a specific credible threat? Well, obviously, if we have been talking about at night and if we have been talking about a situation where a crowd had been gathering at night, then that might be different. But if you're talking about a situation where there's nobody on the street, it's in the middle of the afternoon, it's 334 o'clock, and people are sitting in a McDonald's having lunch, that does not provide a reasonable basis for the police to ignore the constitutional rights of those individuals, their liberty interests, to sit and enjoy a meal. And in this particular case, there is nothing. There's no threat. There's no threat of a threat. There's no suggestion of a threat. It is simply you want them to do what you want them to do. And in this case, they did it. It is not that they refused to move. They did move and move again and move again. They weren't arrested because they didn't move. They were arrested because they asked why. And no court has ever said that an individual can be arrested for questioning the constitutionality of your actions. They were never arrested because they didn't move. In fact, the minor child was arrested because after they arrested his mother, he said, I don't have anywhere to go. And so he was arrested. We have not gotten to that place, I hope, in this country where that is looked upon as lawful conduct by the police simply because they want to be proactive with regard to no specific threat. Can you talk for a minute before your time's up about the excessive force claim? Well, let's take Matthews. Mr. Matthews talks about walking down the street by himself, by all accounts. He is then shot three times with a nonlethal weapon. He falls into a ravine. His head is pushed under the water by the police. He's dragged out of the ravine, up an embankment, beaten, admittedly maced, and it is suggested he's not charged with a crime, no crime, not even failure to disperse because it would be hard to pick one or failure to disperse when you're by yourself. He's not charged with a crime, and yet the trial court says that because the officers had qualified immunity to stop him, that his claim should be dismissed. Well, that is totally inconsistent with the law. They had an objectively reasonable suspicion, fear, whatever, that he was approaching dangerously, right? No. They even contradict themselves. Isn't he the one that continued to advance toward the skirmish line? He says he did not. He says he stopped. One of the officers said that he was told to stop. What's the video show? The video doesn't show that part. Okay. So there's no qualified immunity because he said I wasn't advancing, and a whole skirmish line says he was. No, but you have the facts wrong. The skirmish line doesn't say that. Several officers testified. In fact, one officer testified that he stopped when he was told to stop. They all testified that they did not see a weapon. They all testified, several of them testified, that they could see one palm. Some testified they could see two palms. One said he had a phone in his hand. They all said that none of them believed that he was armed. That is why they used nonlethal weapons. Did you identify who shot the beanbag gun? Absolutely, Jackson. He identified himself. He testified that he shot him three times, and he shot him three times because he was approaching. I thought your argument was more centered or more based upon not so much that they didn't have a reasonable basis to stop him, but that once they stopped him, they used excessive force, particularly holding his head under the water. It's both. You don't have a reasonable basis to stop him, but even if you did, you don't get to use force against an individual just because. And the fact that you happen to be approaching the police officers with your hands up doesn't give you the right to shoot somebody three times, and it certainly doesn't give you the right to hold their head under water and then beat them once you bring them to the sidewalk. And the video does show that, Your Honor. And you certainly do not have the right to then mace the person for no apparent reason when all he's saying to you is, I was simply trying to go home. The facts in this case was that he was not associated with anybody. He took the bus to go check on the well-being of his mother, who happened to live in that neighborhood. He followed the police directions in the manner in which he was to travel and the route in which he was to travel. He then encounters another group of police officers, and then they beat him. There's no case law that says that's okay. There's no case law, federal court, federal circuit, Supreme Court, even state law that says that that's okay. And it's not okay, and this court should not say it's okay. I'd like to save some time for everybody, Your Honor. Let's come to you. You talk about the police creating the situation, at least with respect to Mrs. White and Davis. Yes, sir. I think you're probably aware the Supreme Court just reversed the Ninth Circuit for taking a creative decision. You created the situation with one Fourth Amendment violation and illegal entry, and therefore the excessive force claim is remediable even though there was no excessive force, even though the excessive force was otherwise reasonable. Doesn't that – how does that apply to what you're arguing? Well, Your Honor, it doesn't. Again, you're – You just said they created the situation by clearing the McDonald's, and then it was unreasonable to insist that they move along. Your Honor, what I said was that you created the situation where the assembly existed. They never assembled with anyone. The only time – They, these two plaintiffs, but other people did. Your Honor, the people who were eating were individually eating. There were reporters in the restaurant. There were people who did not know each other. They were not assembled. The people eating in the restaurant weren't the target of the closing, the situation was. But there was no situation. Again, we're assuming – All right. The facts are – You answered my question that the Supreme Court is irrelevant. No, sir. That's not what I said. What I said was – They just said creating the situation. You don't focus on what happens before the alleged Fourth Amendment violation. I mean, it's a totality inquiry. But the fact that the police conduct created the situation where the issue then arose is not a basis for finding a – concluding there was a violation when there otherwise wasn't. Your Honor, that's not what I said. What I said was that there was no assembly and that the only time that one could even argue – What's the basis? Well, the – All right. Where in Missouri law do I go for the focus on when the assembly is? Well, I think the statute itself – The assembly is dispersed to some extent. The statute itself says that in order to have an assembly you have to have six or more people who have gathered together for the purpose of violating the law. That includes the innocent. It doesn't matter who you are. If you have gathered together with individuals who have agreed to violate the law or are violating the law, then that is an unlawful assembly. I think the law is clear in that regard. But you don't have to gather. If you're there and refuse to disperse, as I read the statute, then you're subject to arrest. You might not be convicted of anything. Your Honor, if you would take what you just said to its logical conclusion, that would mean that somebody who is walking down the street – and there happen to be six people over in the corner of a parking lot who have engaged in an unlawful assembly – if you're walking down the street, then you too can be arrested because you're in the vicinity. I don't think that – If you refuse to command. Right. If you refuse to command, but not just because you're there. I mean, that would be standing the Constitution on its head. And I think that the Supreme Court has dealt with the issue. We cannot look at the Constitution and view it as a document that does not take into account the common sense of the situation. And the entire situation. And the entirety of the situation. All right. Thank you. May it please the Court. First, it's a distinct honor for me to be here. I'm Mike Hughes. I hope I do well for the people I represent who are being sued in their individual capacity. And I think it's important to know their names since they're being sued individually. Terrence McCoy, Michael McCann, Derek Jackson, Joe Patterson, Aaron Vinson, William Bates, Nicholas Payne, Daniel Hill, Antonio Valentine, and Sergeant David Ryan. I feel strongly about all of them. I feel strongly for Chief John Belmar. And I also represent St. Louis County. I hope I do well for all of them and for the court below, district court. Allow me to first address. Well, can you. Okay. Since you named all the defendants, can you tell me which ones were involved in the excessive force claim as opposed to the unlawful arrest claim? Excessive. Well, first of all, I don't think any of them use excessive force. I know that. I use the word claim. So let's not get into semantics. Yeah. We're talking about a claim for unlawful arrest. We're talking about a claim for excessive force. And I know you dispute every one of those. So that's a given. Okay. So can you answer my question? Yes. You want me to go through each plaintiff? Which of them are excess force defendants? That's the question. Okay. On Tracy White and William Davis. Zero. And let me say why. Just give us the positives. Anyone you don't name isn't. Well, first of all, Officer McCann was not involved with either one. You haven't got much time, and you've got a question that ought to be just bang, bang, bang. St. Charles County police officers are the ones who handcuffed Tracy White. So none of the St. Louis County police officers touched her. As to William Davis, it was Officer Terrence McCoy who handcuffed him. And, by the way, with regard to McCoy and Davis, it is not denied, it is not in dispute that when he was placed under arrest, he placed his hands behind his back and that no force was used. Does he have an excessive force claim? Actually, no. I don't think so because that was dismissed. Then why are we spending time on what doesn't matter? Okay. Dwayne Matthews. Detective Derek Jackson is the one who shot the Les Lethal weapon three times. And then after that, there were two officers, Vinson and Bates, who went down into the creek after Dwayne Matthews was shot with Les Lethal in the stomach, in the legs, in the arms. And after he fell and hit his head on the concrete, which is not in dispute, two officers, Vinson and Bates, went down and picked him up on the flat ground. And that's when the video starts showing. Who did the macing? Oh, that was Joe Patterson. Is he one of your? Yes. Joe Patterson. It was not denied. It was said it's not material that he used the one short squirt of mace. And it was a guy named Matt Burns who is not a defendant. He's a detective. And are we done with the answer to the preliminary question? Burns was holding him down. So it's only Joe Patterson who used the mace. Now, wait a minute. Burns held him down so he's an excess force defendant? No, he's not a defendant. So, okay. I apologize. With regard to the claims of Carrie White, Sandy Bowers, Kai Bowers, you know, I'm not sure I can tell you the names. But, you know, the officers involved were, you know, Mike McCann, Terrence McCoy. Is that an excess force claim? I thought because they knocked the camera out of the hands. Okay. None of them are claiming injury. You're right. Okay. Nathan Burns, the officers he's being sued are Terrence McCoy, Dan Hill, and Mike McCann. Mike McCann did nothing more than pick him up. He had gotten mace in his eyes. And Dan Hill and Terrence McCoy are the ones that ran over after the city of St. Louis Police Department used mace on him. They ran over when Mr. Burns was disoriented. My notes say that the plaintiffs concede that the city, not county officers, used mace on Burns. I'm sorry, Your Honor. My notes say that there's, with a side to, I guess, your brief, the plaintiff concedes that city officers, not county officers, used mace on Burns. Right. So that would suggest there's no excess force defendant from the county is Burns. Right. Okay. I mean, I'm just telling you people handcuffed him. This was supposed to be preliminary and you're using all your time. I don't understand. Do you have the names? I don't know. So that's it, Your Honor. Those are the excessive force claims. Mr. Lattimore, you know, first said you have to rule in the light most favorable to the non-moving party. And I agree, and that's what the district court did. And, you know, a case that he cited was Torgensen v. City of Rochester, 8th Circuit case, that tells you that the movement bears the initial responsibility, and then the non-movement must respond by submitting evidentiary materials. And you have to look at the record of the whole, and, you know, and the material facts must affect the outcome of the case. And another 8th Circuit case, Engelman v. Deputy Murray, 546 Fed 3994, the court must take as true those assertions properly supported by the record. You know, our record is properly supported. We had 550 facts. Each one was accurately cited. Each one showed a probable cause for the arrest, and each one described in detail the force or lack of force. And I'm happy to answer any questions if you have, but I can go through the facts of Tracy White and William Davis. With regard to the arrest, there's no doubt that Sergeant. I've got a question here, but I can't find it. Who was the fellow that was walking home and was shot with the bean bags? Dwayne Matthews. Okay. All right. If he denies he was approaching the skirmish line when everyone else was dispersing as instructed, but he was just standing there. And six officers say he was approaching us in a hostile and threatening manner. Why isn't that dispute sufficient to avoid qualified immunity summary judgment? Well, several reasons. First of all, you know, he can't identify any of the officers, but he says. We know who shot him. Okay. And we know who shot him, Derek Jackson. Derek Jackson. I assume he testified he was threatened, felt threatened, or he thought his fellow officers were threatened. Yes. All right. And the plaintiff denies he was doing. He was standing there with his bus ticket in the air and his hands up, and he was approaching the line. Is that enough? Why isn't that enough to avoid summary judgment, even for qualified immunity? Well, first of all, he did not deny. He said it's not material that rocks and bottles and even a Molotov cocktail had been thrown. He did not deny. Immediately before he was ordered to disperse, or was this the night before? No, no. This is it. This is momentarily. Simultaneous. Yeah. So he did not deny that there was smoke and tear gas deployed after numerous announcements. He admits he was walking towards the police officers who were wearing military uniforms. Now, wait a minute. Council just said now we have a complete disagreement by our attorneys and oral arguments. So you better give us a record site for your version of the facts. In appendix volume four of four, I think a good place to start is exhibit EE, which shows the facts and the responses. It begins on page 570. So he admits he is walking towards a line of police officers who are wearing military uniforms, and it's dark, and he's walked through tear gas, paragraphs 112 and 113. He did not deny, but he said it is not material, that as the police were dispersing the crowd northbound, he emerged from the smoke heading southbound, paragraph 150 of the facts. He did not deny, but said it is not material, that Payne and Patterson were yelling at him to stop, turn around. He admits, paragraph 151, he admitted in paragraph 178 that he kept coming at police. He admitted in paragraph 153 that Payne considered him a threat. He did not deny, but says not material, that Detective Jackson yelled out, less lethal, less lethal, less lethal. So he admitted after being hit with the first bean bag, he continued moving forward, paragraph 115. He admitted Detective Payne considered him a threat, paragraph 153. He did not deny, but he said it is not material, and his medical history, as recorded by a paramedic, he even said he was told to evacuate. The paramedic patient admits he did not, and then he was shot with rubber bullets and tear gas. So it was a dangerous night. He admitted he saw the police. He knew the police were down there, and he went through the tear gas and smoke. Assuming they had probable cause to arrest him, and assuming they even had probable cause to use nonlethal force with the bean bag, what about his allegations that once he fell into this ravine with water, that they held his head under this water, they beat him unconscious, dragged him out, and then maced him? Now, they admit they maced him one time, so that's not disputed. But why is that not enough to create a genuine issue of fact as to whether even assuming probable cause to arrest there was excessive force used? Okay. Here's the reason, Your Honor, and that's a very good question. First of all, his injuries are all explained by where he was hit with the bean bag rounds, in his stomach, in his arms, in his legs, and then he said he fell into the ravine and hit his head on concrete. And then when he was taken to the hospital, he did not deny, but said it was immaterial that the doctor palpated his forehead, face, abdomen, upper and lower legs, and other areas of the body, and took x-rays and CT scans, and all the objective tests were normal. At most, they wrote he had moderate pain. So the record taken as a whole is completely inconsistent with what he says. I think that's your strongest argument is that the medical examination, and he was released that night and did not seek any further medical attention, as I understand it. Yes. So the medical reports are not consistent with the level of violence that he claims was perpetrated upon him. But is that enough to get you over some re-judgment when he very explicitly says he was beaten? That created a jury question, I guess, is what I'm asking. The de minimis doctrine is gone. I'm sorry. The de minimis injury doctrine is gone. He said he was beaten after he was taken up and laid on flat ground. And contrary to what Mr. Landmark just said, the video didn't show any beating at all. And, you know, the police didn't know they were being videoed. It was some St. Charles County paramedic who had what was called a GoPro around him. And so you know. And I haven't looked at the video. Is it in the record? Do you know? Well, people, everyone discussed what they discussed in their depositions what the video showed. Well, but there apparently is a dispute. Mr. Landmark says it shows one thing. You say it shows something else. I guess probably the best thing for us to do is to look at it and see what we think. Yeah, okay. But there's. Is it in the summary judgment record? The video itself? No. No. And then what about Burns, who claims he was beaten and maced? Why isn't his allegation sufficient to get over qualified immunity or summary judgment on an excessive force claim? Of course, he didn't say who beat him. We know the person who maced him was the city of St. Louis police officer. And in every single excessive force case I've ever had in my life, and I used to work for the city of St. Louis, the medical records are a friend of the plaintiff. In Nathan Burns' case, as in everyone else, the medical records are a friend of ours. For example, we're the ones who present the medical records from the jail intake exam for the nurse, where the patient reported no limitation at this time. The patient does not require special care at this time. The current chief complaint is recurrent lumbar pain for which he has been seeing a chiropractor for the past two months. Okay. No injury. Your time is up, so you can complete the answer, but don't. That's detail. Okay. But anyway, that's in the medical record. There is nothing to show that he was injured. So he had no follow-up care, and within an hour he was seen by a nurse, and he wasn't injured other than he had his current lumbar pain for a chiropractor. Thank you, Your Honor. May it please the Court, Counsel, ladies and gentlemen, I want to touch on something you said, Judge Loken, with respect to the last five to ten years. I believe one of the cases that the Supreme Court decided in January, White v. Pauley, says that you cannot look at qualified immunity from a general point of view. There are unique circumstances that have to be taken into account. Here, actually, Judges Loken and Judge Malloy, you sat on a panel in New v. Denver that discussed, as you mentioned earlier, it is the perception of the officers which you look at when you are trying to determine whether there is arguable, probable cause to arrest someone. Is it a marijuana leaf case? That is the marijuana leaf case, yes, Judge. Who are you representing? Yes, Judge. I represent the City of Ferguson, Tom Jackson, and also Maryland Heights officers D'Elia, McKinnon, and Devouten. Now, my time is short. There is one event that is at stake here. It's August 11th of 2014, just two days after the shooting death of Michael Brown and approximately two and a half weeks before this lawsuit was filed. These three Maryland Heights officers who were assigned to help in a situation that is obviously tense. And one thing you did point to is whether the video is a part of the record. It is. This video is a part of the record. I believe it's a CD that we've labeled as Supplemental Appendix 130. And if you watch that video, it will tell you what you need to know about arguable, probable cause. It will tell you what you need to know about the alleged excessive force. As to which plaintiff? These are Damon Coleman and Theophilus Green, Your Honor. Those two plaintiffs? Yes. And the video that you'll see there was shot by Damon Coleman. If you play it, and it has audio, you will see Bernini versus St. Paul, if you remember, has profanities. There was taunting of the officers. And there was a crowd that was gathered. And as Judge Loken pointed out, the statute in Missouri under 574060 only requires that you be present at the scene of an unlawful assembly. You do not have to be one of the six members for a charge of failure to disperse. That is important. Here, these three officers come on a scene with these two aggravated individuals. And there is at least arguable, probable cause that they are refusing to leave. I think anyone will agree they are not leaving in that video. In fact, they tried to go out after they were placed under arrest. They tried to go out the back, and the officers said, it's too late. You're under arrest. So the video will also have evidence that Mr. Green said, stop throwing rocks, bro. It is clear at least someone in the area was conducting some kind of violence upon officers. And Lieutenant D'Elia was the one who authorized the arrest. That's certainly supported by arguable, probable cause. These three officers executed affidavits. They were not even equipped with any less lethal munitions. Now, you'll see in the video, too, you'll hear at the end, still audio. They were not equipped with what? Lethal or not lethal? Less lethal, which would be their alleged rubber bullets, bean bags, mace balls. Those are less lethal. So they only had firearms, and there was no firearm used. Is that right? Yes, I believe so. I believe McKinnon had a firearm. Yeah, I believe they all did. But none of the less lethal. And that was what the alleged force was on less lethal. Well, the county officers from the video, you can see are in the street. And they're firing. But they weren't sued. The plaintiffs were unable to identify any Maryland Heights officer at all that specifically used force against them. They failed to meet their burden. Your Honors, I know my time is short. If you have any questions, I'm happy to answer them. But that's all I have. Thank you. Thank you. Mr. Gladmore, do I have some time? No, Your Honor. I'll give you three minutes for rebuttal. Thank you. You asked a question, Judge Logan, about why Mr. Matthews was shot and that Jackson perceived him to be a threat. And Jackson testified that he did not shoot him because he perceived him to be a threat. He shot him because he said he didn't comply with the police directive to stop. Detective Vinson testified that Detective Patterson told Matthews to stop, which he did. And then Jackson shot him three times. So the testimony in this case is not just based upon Matthews saying that he complied. There was a detective who also said that he complied. And one of the things that I find particularly troubling is that the appellees claimed that nobody could identify them. Well, the facts in this case are these. The officers concealed their identity. The officers had on masks. The officers were told by the police chief to remove their name badges. He admits that. He admits that he told them to remove their name badges because of the situation at hand. And then to suggest because you can't identify the police officers, although we identified the police officers through subsequent investigation, but to suggest because the plaintiffs couldn't identify police officers who were directed to conceal their identity and who in fact did conceal their identity is outrageous. Police officers don't escape liability because they are able to fool the plaintiffs about their identity. You can't escape liability by removing your name tag. And the problem here is that this was a policy. The police officers were acting consistent and pursuant to a specific policy that was put in place by Chief Jackson and Chief Belmar because the conveniences of the situation did not allow them to follow the Constitution under the circumstances or so they believe. Now, I assume that was a separate claim? Yes, sir. And that's not subject to qualified immunity, so what's the status of that on appeal? That is on appeal, but the trial judge was granted because of the officers being granted qualified immunity, which is incredibly inconsistent with applicable law. There is no law in the United States that allows for a claim regarding an unconstitutional policy that was implemented by a police chief, especially when he admits it, that can be dismissed because of a grant of qualified immunity to the officers. My time is up, Your Honor. Unless you have additional questions, I will submit on the record. And I do believe that the video, as counsel indicated, was submitted into the record. On the Green-Coleman incident or on the other video? I know it was on the Green-Coleman incident. I thought it was on the other incident. I'm not sure on that. I don't want to represent that it was and it wasn't. But I am sure that it was on the Green-Coleman incident. Now, just to – all right. I was going to say, there were so many claims here, I have to confess that I did not really focus on the Minnell claim. But you did – I noticed in your summary of issues, you did appeal that issue. Yes, sir. Yes, sir. All right. Thank you, Your Honor. Thank you, counsel. It's been a pleasure appearing before you. The case has been thoroughly briefed and argued. It raises important issues involving a tragically significant situation. If the argument has been helpful, we'll take it under advisement. Thank you.